UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MaiBo (shenzhen) ke ji you xian gong si<br><br>*Plaintiff*,<br><br>v.<br><br>WhaleCo, Inc., a Delaware corporation, VisBeauty, and Does 1 through 10, inclusive<br><br>*Defendant*. | CASE NO. 23-cv-2793<br><br>**Jury Demand** |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

This is an action brought by Plaintiff MaiBo (shenzhen) ke ji you xian gong si ("Plaintiff"), against Defendants WhaleCo, Inc. ("Temu"), VisBeauty, and Does 1 through 10 (collectively with Temu and VisBeauty, "Defendants"). Upon actual knowledge with respect to itself and its acts, and upon information and belief as to all other matters, Plaintiff alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for (i) trademark counterfeit and infringement in violation of the Trademark Act of 1946, 15 U.S.C. §1114; (ii) the use of false designation of origin and unfair competition in violation of the Trademark Act of 1946, 15 U.S.C.§1125(a);; (iii) trademark dilution in violation of the Trademark Act of 1946, 15 U.S.C.§1125(c); (iv) deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.; (v) unfair competition in violation of Illinois common law.; (vi) contributory trademark infringement.

2. Plaintiff brings this action against Defendants for unauthorized and willfully promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of the Plaintiff's trademark.

1

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over the subject matter of this action pursuant to the Trademark Act, 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), (c), and pursuant to 28 U.S.C.§§ 1331, 1332(a) and (c), 1338(a).

4. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

5. This Court has personal jurisdiction over Defendants because offers for sale and sells its products to consumers in Illinois, through its website at https://www.temu.com and its corresponding mobile application. Specifically, Defendant purposely directs its business activities toward Illinois residents, through its website and corresponding mobile application, and Defendants derives substantial revenue from its services in Illinois. Defendant conducts continuous and systematic business within the State of Illinois and played an integral part in the infringement of Plaintiff's trademark rights directed at residents in this judicial district. Defendants are committing acts that have wrongfully caused Plaintiff harm in the State of Illinois.

6. Venue is proper in this Court pursuant to 28 U.S.C.§ 1391, and this Court may properly exercise personal jurisdiction over Defendants since the Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce store. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers, offers shipping to the United States, including Illinois, accepts payment in U.S. dollar and, on information and belief, have sold products to residents of Illinois. Defendants are engaging in interstate commerce, and have wrongfully caused Plaintiff substantial injury in the State of Illinois.

## THE PARTIES

**The Plaintiff**

7. Plaintiff MaiBo (shenzhen) ke ji you xian gong si is a limited company organized and existing under the laws of China, having its principal office address at qian hai shen gang he zuo qu, qian wan yi lu 1 hao A dong 201 shi, Shenzhen, Guangdong, CHINA.

**The Defendants**

8. Defendant WhaleCo, Inc. ("Temu") is a Delaware corporation with a principal place of business at 31 St. James Avenue, Boston, Massachusetts 02116. On information and belief, WhaleCo, Inc. operates an online retail store under the TEMU brand at https://www.temu.com.

9. Temu describe itself as "Temu (tee-moo) connects you with millions of sellers, manufacturers, brands and logistic partners around the world to empower you live your best lives."

10. Temu claims to have customers enjoying "wholesale prices anytime, anywhere, and in any quantity from top suppliers and brands in the world."

11. On information and belief, "Temu currently adopts a self-operated model. The Temu sellers are only responsible for the supply and delivery to Temu's warehouse, and the rest of the pricing, selling, marketing, logistics and distribution, and after-sales are all taken care of by Temu itself. In order to sell on Temu, the sellers almost gave up the pricing power of the product."[1]

12. Defendants VisBeauty, and Does 1 through 10, inclusive are sellers, manufacturers, and/or vendors, which list the products on Temu that infringing Plaintiff's trademark without Plaintiff's knowledge or consent or have contributed to said infringement. The true names, whether corporate, individual or otherwise of Defendants VisBeauty, and Does 1-10, inclusive, are presently unknown to Plaintiff, which therefore sues said Defendants by such fictitious names and will seek leave to amend this complaint to show their true names and capacities when same have been

---

[1] See What is Temu? What Impact Does Temu Have on Dropshipping? Available at https://www.sourcinbox.com/blog/what-is-temu-what-impact-does-temu-have-on-dropshipping (Last visited May 4, 2023). A true and correct copy of this website is attached hereto as Exhibit 2.

ascertained.

13. On information and belief, Temu, VisBeauty, and Defendants Does 1-10, promote, sell, offer for sale and distribute goods bearing or using infringements and confusingly similar imitations of Plaintiff's trademark.

## FACTTUAL BACKGROUND

**Plaintiff's Trademark Right**

14. Plaintiff owns the registered trademark FitBeast (the "FitBeast Mark"). No one but Plaintiff is authorized to manufacture, import, export, advertise, offer for sale or sell any goods bearing the FitBeast Mark, without the Plaintiff's written permission.

15. Plaintiff is the owner of the FitBeast Mark in International Class 28 for goods including bar-bells, body-building apparatus, boxing gloves, climbers' harness, dumb-bells, knee guards for athletic use and so on.

16. The USPTO registered the FitBeast Mark on November 30, 2021, and assigned U.S. Reg. No. 6,571,597. A true and correct copy of the registration certificate for the FitBeast Mark is annexed as Exhibit 1.

17. The FitBeast Mark has been used in interstate commerce to identify and distinguish Plaintiff's high-quality sporting article for an extended period of time.

18. Plaintiff sells its Hand Grip strengtheners on Amazon under its FitBeast Mark. Plaintiff's Hand Grip strengtheners are well established on Amazon and enjoy quality customer reviews.

19. Plaintiff's Hand Grip strengthener has received a 4.5 out of 5-star rating based on over 20,577 customer reviews and 68% of the reviews were 5 stars, and 88% of the reviews were over 4 stars.

4



20. Also, Plaintiff's Hand Grip strengtheners ranked as the first place in best sellers in Strength Training Grip Strengtheners on Amazon and it is also Amazon's choice.



21. The FitBeast Mark is symbol of Plaintiff's quality, reputation and goodwill and has never been abandoned.

22. As a result of Plaintiff's exclusive and extensive use of the FitBeast Mark, the FitBeast Mark has acquired substantial value and recognition in the United States. Plaintiff has

expended substantial time, money and other resources developing, advertising or otherwise promoting the FitBeast Mark. The FitBeast Mark qualifies as a famous mark as that term is used in 15 U.S.C. § 1125(c)(1).

23. Plaintiff has carefully monitored and policed the use of the FitBeast Mark and has never assigned or licensed the FitBeast Mark to any of the Defendants in this matter.

24. Genuine Hand Grip strengtheners bearing and sold under the FitBeast Mark are widely legitimately advertised and promoted by Plaintiff via Internet. Visibility on the Internet, particularly via Internet search engines such as Google, Amazon.com, has become increasingly important to Plaintiff's overall marketing. Thus, Plaintiff expends significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Those strategies allow Plaintiff to fairly and legitimately educate consumers about the value associated with the Plaintiff's brand and the goods sold thereunder.

**Defendants' Infringing Activities**

25. Seeing the success of the Plaintiff in selling its Hand Grip strengtheners under FitBeast Mark, Defendants began to infringe the FitBeast Mark to steal Plaintiff business success.

26. On information and belief, Defendants VisBeauty, and Does 1 through 10 list the products using and bearing counterfeit and infringing trademark that are exact copies of the FitBeast Mark (the "Counterfeit Goods") on Temu's website, and deliver the products to Temu's warehouse in Guangzhou. A true and correct screenshot of the listing is shown as below:



27. In addition to infringing the Plaintiff's trademark, Defendants also willfully utilized marketing images that were identical to those of Plaintiff. A true and correct screenshot of the listing using Plaintiff's marketing images is shown as below.



28. On information and belief, Defendants VisBeauty, and Does 1 through 10 do not have the right to set prices for the Counterfeit Goods.

29. On information and belief, Temu is responsible for the unauthorized pricing, selling,

marketing, importation, distribution, and transportation in interstate commerce of goods, including Hand Grip strengtheners, bearing FitBeast Mark.

30. Upon information and belief, Temu engaged in the sale, importation, distribution, and transportation of Counterfeit Goods, with knowledge that they were in connection with the FitBeast Mark or willfully ignored this fact.

31. Defendants engaged in a deliberate effort to cause confusion and mistake among the consuming public as to the source, affiliation, and sponsorship of Counterfeit Goods with intent to gain the benefit of the goodwill associated with the FitBeast Mark.

32. As shown above, Defendant's 5-piece Hand Grip strengtheners workout kit retails for $4.18, which is even lower than half of Plaintiff's price for the Hand Grip strengtheners workout kit.

33. Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiff's genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, selling, and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Plaintiff despite Defendants' knowledge that they are without authority to use the FitBeast Mark. The net effect of Defendants' actions is likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale in Defendants' e-commerce stores, and websites are genuine goods originating from, associated with, and/or approved by Plaintiff.

34. Defendants advertise e-commerce stores, and websites, including their Counterfeit Goods offered for sale to the consuming public, via e-commerce stores, and/or websites. In so advertising their stores and products, Defendants improperly and unlawfully use of the FitBeast Mark without Plaintiff's permission.

35. Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the FitBeast Mark, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand via the Internet.

36. Defendants' conduct is devastating on Plaintiff's reputation and goodwill. Defendants' Counterfeit Goods are unauthorized, low-quality and mass-market.

37. By flooding the market with cheap and plentiful counterfeit goods, Defendants are irreparably harming Plaintiff's reputation and goodwill, infringing the FitBeast Mark, and engaging in unfair competition.

38. Defendants have also knowingly created a fictitious association with Plaintiff by misappropriating the FitBeast Mark, using Plaintiff marketing images, and to offer for sale, Counterfeit Goods.

39. Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

40. At all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the FitBeast Mark, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

41. Defendants' use of the FitBeast Mark, including the promotion and advertisement, reproduction, distribution, sale, and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

42. Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

43. Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

44. The Defendants' conduct is part of a willful and deliberate scheme to engage in an unlawful — but reportedly highly profitable — business by trading on the goodwill and commercial success of Plaintiff's.

45. Defendants' conduct is willful and deliberate because Defendants not only infringe Plaintiff's trademark, but also willfully utilized marketing images that were identical to those of the Plaintiff.

46. Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the FitBeast Mark. If Defendants' counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

47. The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

///

## COUNT I
### (Trademark Counterfeiting and Infringement Pursuant to 15 U.S.C. § 1114)

48. Plaintiff incorporates by reference the allegations set forth above in this Complaint as if fully set forth herein.

49. This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusing similar imitation of the FitBeast Mark in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of Counterfeit Goods.

50. Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of the FitBeast Mark. Defendants are continuously infringing and inducing others to infringing the FitBeast Mark by using it to advertise, promote, offer to sell, and sell counterfeit and infringing Plaintiff's branded goods.

51. Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusing, mistake, and deception among members of the trade and the general consuming public as to the origin and quantity of Defendants' Counterfeit Goods.

52. Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

53. Defendants' above-described illegal actions constitute counterfeiting and infringement of the FitBeast Mark in violation of Plaintiff's rights under 15 U.S.C. § 1114.

54. Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminary and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

///

## COUNT II
### (False Designation of Origin Pursuant to 15 U.S.C. § 1125(a))

55. Plaintiff incorporates by reference the allegations set forth above in this Complaint as if fully set forth herein.

56. Defendants' Counterfeit Goods bearing, offered for sale and sold using copies of the FitBeast Mark have been widely advertised and offered for sale throughout the United States via Temu.

57. Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of at the FitBeast Mark is virtually identical in appearance to Plaintiff's genuine goods. However, Defendants' Counterfeit Goods are different and likely inferior in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

58. Defendants have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

59. Defendants have authorized infringing uses the FitBeast Mark in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

60. Additionally, Defendants are using counterfeits and infringements of the FitBeast Mark in order to unfairly compete with Plaintiff and others for space within organic search engine, hereby jointly depriving Plaintiff of a valuable marketing which would otherwise be available to

Plaintiff and reducing the visibility of Plaintiff's genuine goods on the Amazon.com.

61. Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

62. Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT III
**(Trademark Dilution Pursuant to 15 U.S.C. § 1125(c))**

63. Plaintiff incorporates by reference the allegations set forth above in this Complaint as if fully set forth herein.

64. Through the longstanding and widespread use of the FitBeast Mark in the United States, the FitBeast Mark has become impressed upon the minds of the relevant trade and consuming public as identifying the FitBeast brand, owned by Plaintiff. As a result, the FitBeast Mark is famous, distinctive, and widely recognized by the general consuming public in the United States, and the FitBeast Mark was famous and distinctive prior to Defendant's acts set forth above. Defendant's acts have diluted the distinctive quality of the famous FitBeast Mark, in violation of 15 U.S.C. § 1125(c).

65. Defendant engaged in the aforesaid acts with the intent to trade off Plaintiff's reputation and/or to cause dilution of the famous FitBeast Mark.

66. Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

67. Plaintiff has no adequate remedy at law.

68. As a result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, money damages in an amount to be proven at trial.

## COUNT IV
## (Deceptive Trade Practices Pursuant to Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1)

69. Plaintiff incorporates by reference the allegations set forth above in this Complaint as if fully set forth herein.

70. On information and belief, Defendants' acts of using the Counterfeit FitBeast Mark with their products to trick consumers into buying products from Defendants, were made with the intent to cause a likelihood of confusion, or of a misunderstanding as to the source, ownership and/or association with FitBeast -branded goods.

71. On information and belief, Defendants have willfully engaged in the deceptive trade practices complained of herein.

72. Defendants' acts constitute unlawful and unfair competition in violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510, in that such acts were and are unlawful, unfair, deceptive, and/or fraudulent business acts.

73. On information and belief, Defendants have willfully engaged in the deceptive trade practices complained of herein.

74. Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Plaintiff.

75. Defendants' statutory violations and other wrongful acts have injured and threaten to continue to injure Plaintiff, including loss of customers, dilution of goodwill, confusion of existing and potential customers, injury to its reputation, and diminution in the value of its intellectual property.

76. Defendants have unjustly gained revenue and profits by virtue of its wrongful acts that it otherwise would not have obtained and to which it is not entitled.

77. Plaintiff has also been injured and will continue to incur attorneys' fees and costs in

bringing the present action.

78. Plaintiff has no adequate remedy at law for the wrongful actions of Defendants.

## COUNT V
### (Unfair Competition Pursuant to Illinois Common Law)

79. Plaintiff incorporates by reference the allegations set forth above in this Complaint as if fully set forth herein.

80. This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing and/or using the FitBeast Mark. Plaintiff is the owner of all common law rights in and to the FitBeast Mark.

81. Defendants have engaged in such unfair and improper conduct to trade off of, and benefit from, the reputation and goodwill in the FitBeast Mark.

82. Specifically, Defendants are promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of the FitBeast Mark.

83. Through its use of the Counterfeit FitBeast Mark, Defendants has unfairly caused prospective and actual customers of the Plaintiff to be confused as to whether Defendant is associated with the FitBeast brand. As a result, Plaintiff has lost sales and profits. Defendants have also harmed the FitBeast brand, goodwill, and reputation.

84. The acts described above constitute unfair competition under Illinois common law.

85. Defendants' aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

86. Plaintiff has no adequate remedy at law.

87. Defendants' conduct was oppressive, fraudulent, and malicious, entitling Plaintiff to an award of punitive damages.

///

## COUNT VI
### (Contributory Trademark Infringement)

88. Plaintiff incorporates by reference the allegations set forth above in this Complaint as if fully set forth herein.

89. Even if the Counterfeit Goods were not listed by Temu, Temu at least contributed to infringe FitBeast Mark by unauthorized pricing, selling, marketing, importation, distribution and transportation in interstate commerce of goods bearing FitBeast Mark.

90. Temu has failed to prevent infringement of FitBeast Mark.

91. By facilitating and enabling the listings of products for sale that Temu was aware infringed FitBeast Mark, Temu contributed to the infringement.

92. Temu knew about the infringement and allowed the infringement to continue.

93. Temu's actions and inaction contributed to the infringement of FitBeast Mark.

94. Temu aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause substantial and irreparable injury to Plaintiff.

95. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

a. Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65, enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the FitBeast Mark; from using the FitBeast Mark, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name, or trademark or design that may be calculated to falsely advertise the services or goods of

16

Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with the FitBeast Mark; from falsely representing themselves as being connected with the FitBeast Mark, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with the FitBeast Mark; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the FitBeast Mark in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of the FitBeast Mark, or in any way endorsed by the FitBeast Mark and from offering such goods in commerce;

      b.     Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of the FitBeast Mark.

      c.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Plaintiff to serve an injunction issued by the Court on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses which are used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits, and/or infringements of the FitBeast Mark.

      d.     Entry of an order requiring Defendants to account to and pay Plaintiff for all profits

17

and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

    e.    Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

    f.    Entry of an order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Defendants, used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

    g.    Entry of an award of pre- and post- judgment interest on the judgment amount.

    h.    Entry of an order for any further relief as the Court may deem just and proper.

**Jury Trial Demand**

Plaintiff hereby demands a jury trial on all issues so triable.

Date: 5/4/2023                  /s/ Tianyu Ju
                                                     Tianyu Ju, Esq.
                                                     GLACIER LAW LLP

        200 E. Randolph Dr., Ste. 5100
        Chicago, IL 60601
        iris.ju@glacier.law
        312-499-2666
        ***Attorney for Plaintiff***