IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MaiBo (shenzhen) ke ji you xian gong si, <br><br> Plaintiff, <br><br> v. <br><br> WhaleCo, Inc., VisBeauty, and Does 1-10, <br><br> Defendants. | Case No. 23 C 2793 <br><br> Hon. LaShonda A. Hunt |

**MEMORANDUM OPINION AND ORDER**

Plaintiff MaiBo (shenzhen) ke ji you xian gong si ("MaiBo") filed this action against Defendants WhaleCo, Inc. ("Temu"),[1] VisBeauty, and Does 1-10 (collectively, "Defendants"),[2] alleging trademark counterfeiting and infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), trademark dilution under 15 U.S.C. § 1125(c), deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, unfair competition under Illinois common law, and contributory trademark infringement. Currently before the Court is Temu's motion to dismiss all claims in the complaint under Fed. R. Civ. P. 12(b)(6). For the reasons stated below, the motion [24] is granted in its entirety, and Plaintiff's complaint is dismissed.

**BACKGROUND**

MaiBo is a Chinese company that owns the registered trademark "FitBeast" ("the Mark"). (Compl. ¶¶ 7, 14). Relevant here, MaiBo sells hand grip strengtheners bearing the Mark on

---

[1] According to the complaint, "[o]n information and belief, WhaleCo, Inc. operates an online retail store under the TEMU brand at https://www.temu.com." (Compl. ¶ 8, Dkt. 1). For consistency, the Court will refer to Defendant WhaleCo, Inc. as Temu.

[2] Plaintiff obtained an entry of default against Defendant VisBeauty [Dkt. 45] and filed a motion for default judgment [Dkt. 47] which is pending. Regarding Defendant Does 1-10, Plaintiff has not identified them or served them [Dkt. 42]. Accordingly, pursuant to Fed. R. Civ. P. 4(m), all claims against Defendant Does 1-10 are dismissed without prejudice. Only Defendant Temu has appeared and defended this case.

Amazon, where the product has received a 4.5 out of 5-star rating based on over 20,000 customer reviews, with 68% giving 5-star reviews and 88% giving over 4 stars. (*Id.* ¶¶ 18-19). MaiBo touts its product ranking "as the first place in best sellers in Strength Training Grip Strengtheners on Amazon" and its product as "Amazon's choice." (*Id.* ¶ 20). MaiBo alleges that it has "expended substantial time, money and other resources developing, advertising or otherwise promoting the FitBeast Mark," such that the Mark has "acquired substantial value and recognition in the United States," and is "famous . . . as that term is used in 15 U.S.C. § 1125(c)(1)." (*Id.* ¶ 22).

Temu operates an online retail store platform that connects buyers with "millions of sellers, manufacturers, brands and logistic partners around the world" through its website, https://www.temu.com, and mobile application. (*Id.* ¶¶ 5, 8-9). VisBeauty and Does 1-10 are sellers, manufacturers, and/or vendors who allegedly list counterfeit goods on Temu for sale that bear the Mark and use marketing images that are identical to those of MaiBo. (*Id.* ¶¶ 26-27). MaiBo alleges solely on information and belief that VisBeauty and Does 1-10 are responsible for supplying and delivering infringing products to the Temu warehouse, and then Temu handles "the pricing, selling, marketing, logistics, and distribution, and after-sales." (*Id.* ¶ 11). Also, on information and belief, MaiBo alleges that "Temu is responsible for the unauthorized pricing, selling, marketing, importation, distribution, and transportation in interstate commerce" of hand grip strengtheners bearing the Mark, and "Temu engaged in the sale, importation, distribution, and transportation" of infringing products "with knowledge that they were in connection with [the Mark] or willfully ignored this fact." (*Id.* ¶¶ 30-31). Finally, MaiBo claims that Defendants "are concurrently conducting and targeting their counterfeiting and infringing activities towards consumers. . . within this district and elsewhere throughout the United States." (*Id.* ¶ 39).

MaiBo asserts that Defendants' unauthorized actions constitute trademark counterfeiting and infringement, false designation of origin, and trademark dilution under the Lanham Act, *see* 15 U.S.C. §§ 1114, 1125, deceptive trade practices and unfair competition under Illinois law, and contributory trademark infringement. Temu has moved for dismissal of all claims for failure to plausibly allege the following: (1) the "use in commerce" and a "famous" mark; (2) that Temu induced infringing activity or knew or had reason to know about such activity; and (3) the relevant conduct occurred "primarily and substantially" in Illinois.

## **LEGAL STANDARD**

Rule 12(b)(6) provides for dismissal of a complaint that fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). While a complaint need not include "detailed factual allegations," a plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In analyzing a motion to dismiss under Rule 12(b)(6), this Court must "accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor." *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021). However, the court need not accept legal conclusions as true. *Twombly*, 550 U.S. at 555 (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A claim must be facially plausible to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires more than a "sheer possibility," but does not rise to the level of probability. *Id.*

**DISCUSSION**

I. **Lanham Act Claims**

MaiBo raises three distinct claims under the Lanham Act—trademark counterfeiting and infringement, false designation of origin and unfair competition, and trademark dilution—but each cause of action requires that a mark be used "in commerce." *See* 15 U.S.C. §§ 1114, 1125(a), 1125(c). In addition, for trademark dilution, the mark also must be "famous." *See* 15 U.S.C. § 1125(c). Because MaiBo has failed to sufficiently allege that Temu used the Mark "in commerce" or that the Mark is "famous," Temu's motion is granted as to Counts I, II, and III.

A. **Use in Commerce**

The Lanham Act defines "use in commerce" as follows:

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce--
> (1) on goods when--
> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
> (B) the goods are sold or transported in commerce[.]
>
> \*\*\*

15 U.S.C. § 1127. "The Supreme Court has held that the term 'use in commerce' should be construed broadly '[i]n the light of the broad jurisdictional grant in the Lanham Act.'" *Slep-Tone Ent. Corp. v. Coyne*, 41 F. Supp. 3d 707, 713 (N.D. Ill. May 8, 2014) (citing *Steele v. Bulova Watch Co.*, 344 U.S. 280, 286 (1952)). The definition of "use in commerce" provided by the Lanham Act establishes that goods sold bearing a mark are "used in commerce." 15 U.S.C. § 1127. Thus, an allegation that a defendant sells products bearing the Mark may be sufficient to plead that it was

4

"used in commerce." *See Chanel, Inc. v. RealReal, Inc.*, 449 F Supp. 3d 422, 441-42 (S.D.N.Y. 2020) (holding that Plaintiff had sufficiently pled direct trademark infringement when it alleged that Defendant marketed and sold products bearing Plaintiff's mark).

But Temu argues that is not the situation here, as "owning and operating a platform is not 'use in commerce'[;]" rather, "[a] platform is only liable for infringement if it is 'actively involved in the infringing conduct' itself." (Def. Mem. at 4, Dkt. 25). And Temu asserts that it falls into the former category, not the latter. In response, MaiBo contends that alleging on information and belief that Temu does more than merely own and operate a platform is sufficient. (Pl. Mem. at 3-4, Dkt. 28). Not so. To survive a Rule 12(b)(6) motion, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, MaiBo must offer "enough factual matter (taken as true) to suggest that" Temu, as opposed to third-party vendors who offer infringing products for sale on Temu's site, is also liable. *See id.* at 556.

MaiBo does point to an article attached to its complaint titled "What is Temu? What Impact Does Temu Have on Dropshipping?" Fed. R. Civ. Pro. 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Still, exhibits to a complaint are not blindly accepted by a court as part of a pleading. *See, e.g.*, *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 465 (7th Cir. 1998) (holding that in addition to comparing statements in an exhibit attached to a complaint with the complaint itself to resolve tension between the documents, "courts should also consider the type of document in which the statement is being made and for what purpose the document is being offered").

The article appears to be a blog post speculating that Temu is responsible for marketing, pricing, and selling the products sellers deliver to its warehouse, but it lacks an author or publication date or any other indicia of reliability. More importantly, the unknown author does not

5

discuss any specific products sold on the Temu platform, or purport to have knowledge about Temu's practices with respect to products bearing the Mark or hand grip strengtheners in general. In sum, the Court gives no weight to an article that is neither authenticated nor relevant to the specific claims in this case. The Court thus concludes that the complaint lacks any factual allegations to state a plausible claim of Temu using the Mark "in commerce." *Cf. Chanel*, 449 F. Supp. 3d at 441-42 (holding that "[a]t the motion to dismiss stage, Chanel has adequately averred that *its own investigation* revealed that [defendant] marketed and sold counterfeit *Chanel* products . . . .") (emphasis added).

### B. Famous Mark

A mark is "famous" if "it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services or the mark's owner." 15 U.S.C. § 1125(c)(2)(A). "In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following: (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties[;] (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark[;] (iii) The extent of actual recognition of the mark[; and] (iv) Whether the mark was registered under [certain Acts] or on the principal register." *Id.* Fame is a "stringent standard," and "[t]o reach the requisite level of fame [for a trademark dilution claim], a mark must generally be a 'household name.'" *Joshi v. Joshi*, Case No. 18 C 5426-SLE, 2019 WL 3554388, at *5-6 (N.D. Ill., Aug. 1, 2019). Fame in a niche area or market will not suffice; the benchmark for fame is recognition among the general consuming public. *Id.* at *6.

MaiBo's allegations fall short here as well. The complaint cites favorable Amazon ratings, customer reviews, and rankings for the FitBeast hand grip strengtheners, as well as MaiBo's

6

extensive marketing and advertising efforts to promote the product. Even if true, those facts do not establish that acquiring "substantial value and recognition in the United States," Compl. ¶ 22, makes a mark "famous." In its response brief, MaiBo attempts to bolster this contention with additional details, such as the Mark was registered in 2021, has been used for five years and included on products sold to all 50 states, and is well recognized in the industry. (Pl. Mem. at 8, Dkt. 28).[3]

But courts have repeatedly rejected arguments that similar allegations "plausibly meet such a stringent standard" of pleading that a mark is famous. *See Joshi*, 2019 WL 3554388, at *5-6 (collecting cases). Having an internationally recognized mark that is the subject of millions of dollars of marketing was not enough. *Id.* Being registered on the principal register and plaintiff having invested substantial resources in national and international marketing campaigns and used the mark since 1996 was not enough. *Plumeus, Inc. v. INTERSOG LLC*, Case No. 13 C 2206, 2013 WL 5609331, at *2 (N.D. Ill., Oct. 11, 2013). Even a trademark dilution claim for a mark used for over 18 years in zoos around the country was dismissed where, among other issues, nothing in the complaint suggested the mark had reached the status of a household name. *Rice v. Reading for Educ., LLC*, No. 19-cv-0245, 2019 WL 4933420, at *1-3 (E.D. Wis. Oct. 7, 2019). Indeed, MaiBo itself suggests that any fame achieved by the Mark does not extend beyond a niche market, by contending that it is well recognized *in the industry*.

Merely alleging "[t]he FitBeast Mark qualifies as a famous mark as that term is used in 15 U.S.C. § 1125(c)(1)," Compl. ¶ 22, cannot salvage this claim. That is nothing more than a legal conclusion which the Court need not accept as true. *See, e.g*, *Control Sols. LLC v. Oshkosh Corp.*,

---

[3] The Court may consider this information, despite the fact that it was not included in MaiBo's complaint, because a plaintiff is afforded flexibility in opposing a motion to dismiss under Rule 12(b)(6). *Geinosky v. City of Chi.*, 675 F.3d 743, n.1 (7th Cir. 2012). So long as elaborations in a response to a motion to dismiss are consistent with the pleadings, they may properly be considered. *Id.*

No. 10 C 121, 2011 WL 1131329, at *3 (N.D. Ill. Mar. 28, 2011) (granting motion to dismiss trademark dilution claim when plaintiff failed to allege that the mark was famous beyond stating the same, where "[t]here is no evidence that the general consuming public would in any way associate Oshkosh with armored vehicles.").

Consequently, Counts I, II, and III of the complaint are dismissed.

### II. Contributory Trademark Infringement

"[I]f a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially [sic] responsible for any harm done as a result of the deceit." *Inwood Lab'ys., Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 854 (1982). Again, MaiBo's complaint relies solely on conclusory allegations that Temu knew or should have known about infringing activity, instead of facts to demonstrate grounds for liability. First, the complaint lacks any facts sufficient to allege that Temu induced VisBeauty, Does 1-10, or any other third party to infringe the Mark. The only support offered for such a claim is found in the Li Xiaozhou Declaration attached to MaiBo's memorandum in response to Temu's motion to dismiss, which is a document outside the pleadings that is not properly before the Court.[4]

Second, MaiBo has failed to sufficiently allege that Temu knew or had reason to know of any potential infringement. The complaint is littered with legal conclusions couched as factual allegations, (*see, e.g.*, Compl. ¶¶ 30, 33, 42, 44), which are insufficient to pass muster and defeat

---

[4] The Xiaozhou Declaration [Dkt. 28-1] cannot be considered when assessing a Rule 12(b)(6) motion. Neither Xiaozhou nor YeMeng (the company Xiaozhou manages) are referenced in the complaint. The contents of the Declaration are not central to MaiBo's claims here. As far as the Court can tell, Xiaozhou and YeMeng have no apparent relationship to this case, the FitBeast mark, or hand grip strengtheners in general. Thus, in addition to not being referenced in the complaint, the declaration is not consistent with the pleadings. *See Geinosky*, 675 F.3d at n.1; *Heng v. Heavner, Beyers, & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017) (citing *Geinosky*, 675 F.3d at 745 n.1) (holding that district court did not abuse discretion in granting a motion to strike an exhibit to a response to a motion to dismiss because the exhibit was from a non-party and was not material to the complaint and thus was not consistent with the pleadings). As such, the Declaration will be disregarded.

a motion to dismiss. As Temu has highlighted, the complaint lacks any facts to suggest that Temu knew that any infringement was occurring prior to the filing of this lawsuit. (Def. Mem. at 10). Far more is needed before a claim for contributory negligence may proceed, contrary to MaiBo's argument that "as the counterfeit goods were sold and offered to sell through Temu and Temu monitors and controls its and other sellers' advertisements, it is reasonable to conclude that Temu knew or should have known of the trademark infringement alleged in this case." (Pl. Mem. at 10-11). Indeed, "[f]or contributory trademark infringement to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010).

Consequently, Count VI of the complaint is dismissed.

### III. State Law Claims – Counts IV and V

The remaining two claims arise under state law: deceptive trade practices pursuant to the Illinois Uniform Deceptive Trade Practices Act (UDTPA) and unfair competition pursuant to Illinois common law. The UDTPA applies to conduct that occurs "primarily and substantially in Illinois." *Maui Jim, Inc. v. SmartBuy Guru Enters.*, No. 16-cv-9788, 2018 WL 509960, at *5 (N.D. Ill. 2018); *see also LG Electronics U.S.A., Inc. v. Whirlpool Corp.*, 809 F. Supp. 2d 857, 859 (N.D. Ill. 2011) ("Having read the 'express provisions of the [UDTPA],' the Court discerns no 'clear intent' that the [Act] have extraterritorial effect."). In determining whether conduct occurred "primarily and substantially in Illinois," courts may look to the plaintiff's residence and the defendant's place of business along with the location where any misrepresentation was made, damage occurred, communications between the parties occurred, complaints were to be directed, and the location of the item that was the subject of the transaction. *Maui Jim*, 2018 WL 509960, at

\*5; *FireBlok IP Holdings, LLC v. Hilti, Inc.*, No. 19-cv-50122, 2021 WL 6049964, at \*4 (N.D. Ill. 2021). A claim of unfair competition pursuant to Illinois common law is codified by the UDTPA and thus need not be separately addressed. *MJ & Partners Rest. Ltd. P'ship v. Zadikoff*, 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998).

MaiBo fails to plausibly allege the relevant conduct in this case occurred "primarily and substantially" in Illinois. Instead, its complaint alleges *only* that "Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States." (Compl. ¶ 39). An allegation is not well-pled if it alleges only that conduct occurred in Illinois along with other states around the country. *FireBlok*, 2021 WL 6049964, at \*5 (holding that an allegation that products were sold "throughout the United States, including in this district" was insufficient to state a claim for relief because "far from primarily and substantially arising in Illinois, the transactions are alleged to occur throughout the United States, and Illinois just happens to be one of those states."); *Maui Jim*, 2018 WL 509960, at \*5 (granting motion to dismiss counterclaims when pleadings "exclusively offer[ed] evidence of . . . nationwide, as opposed to Illinois-specific conduct"). MaiBo's pleading fails to connect the conduct at issue to Illinois specifically. The complaint lacks any facts to suggest that the parties, neither of which resides or maintains its principal place of business in Illinois, engaged in any communications in Illinois or that any misrepresentation or damage occurred in Illinois.

Consequently, Counts IV and V of the complaint are dismissed.

**CONCLUSION**

For the reasons discussed above, Defendant WhaleCo Inc.'s motion to dismiss is granted. Plaintiff is granted leave to file an amended complaint consistent with this ruling by 5/27/24. Otherwise, this case may be dismissed with prejudice without further court order and closed.

Dated: April 29, 2024                    ENTERED:

                                         _____
                                         **LASHONDA A. HUNT**
                                         **United States District Judge**